IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| JENNIFER HOUSER, As Special Administrator of the Estate of Morgan Angerbauer, | ) ) ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. _____ |
| | ) | |
| LASALLE MANAGEMENT COMPANY, LLC, d/b/a LASALLE CORRECTIONS; LASALLE CORRECTIONS, LLC; LASALLE SOUTHWEST; RODNEY COOPER, in His Official Capacity; WILLIAM MCCONNELL, in His Official Capacity; PAT TEMPLE, in His Official Capacity; WMC ENTERPRISES, LLC; KPL, LLC; CHRIS BELL, in His Official Capacity; ROBERT PAGE, in His Official Capacity; BRITTANY JOHNSON, in Her Individual and Official Capacities; REGINA LYNCH, in Her Individual and Official Capacities; JANE DOES #1-10; and JOHN DOES #1-10, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | JURY TRIAL DEMANDED |
| Defendants. | ) | |

---

## COMPLAINT

---

COMES NOW the Plaintiff, Jennifer Houser, as Special Administrator of the

Estate of Morgan Angerbauer, deceased, by and through undersigned counsel, and

for her Complaint, states:

## PARTIES, JURISDICTION, and VENUE

1. Plaintiff Jennifer Houser is a citizen and resident of Texarkana, Miller County, Arkansas, and she was appointed Special Administrator of the Estate of Morgan Angerbauer, deceased, by the Miller County Circuit Court in Probate Case No. 46PR-16-146 on July 7, 2016.

2. Defendant LaSalle Management Company, LLC, d/b/a LaSalle Corrections, is a business entity formed under the laws of the State of Tennessee and, on information and belief, is responsible—directly or through one or more subsidiaries—for the day-to-day operations of the Bi-State Detention Facility ("Bi-State Jail") pursuant to a contract with Texarkana, TX; Texarkana, AR; and Bowie County, TX.

3. Defendant LaSalle Corrections, LLC, is a business entity formed under the laws of the State of Tennessee and, on information and belief, is responsible—directly or through one or more subsidiaries or affiliates—for the day-to-day operations of the Bi-State Jail pursuant to the contract referenced in paragraph 2, *supra*.

4. Defendant LaSalle Southwest is a subsidiary or affiliate of LaSalle Corrections, LLC, and, on information and belief, is responsible—directly or through one or more subsidiaries or affiliates—for the day-to-day operations

of the Bi-State Jail pursuant to the contract referenced in paragraph 2, *supra*.

5. Defendant Rodney Cooper is LaSalle's Executive Director for operations in Texas who, by his own admission, "monitors general operations at all of the Texas facilities," which necessarily includes monitoring the hiring, staffing, training, and supervision of employees at the Bi-State Jail and inmates' access to medical treatment at the Bi-State Jail.

6. Defendant William McConnell is a co-founder and Managing Director of LaSalle Corrections, who, by his own admission, "oversees all aspects of LaSalle's operations," which necessarily includes aspects of LaSalle's operations in hiring, training, supervising, and providing medical treatment at Bi-State Jail.

7. Defendant Pat Temple is a co-founder and Managing Director of LaSalle Corrections, who, by his own admission, "oversees all aspects of LaSalle's operations," which necessarily includes aspects of LaSalle's operations in hiring, training, supervising, and providing medical treatment at Bi-State Jail.

8. Defendant WMC Enterprises, LLC, is a company formed under the laws of the State of Tennessee, which is owned—in whole or in majority—by Defendant William McConnell and through which Defendant McConnell maintains his ownership of LaSalle Corrections.

9.  Defendant KPL, LLC, is a company formed under the laws of the State of Tennessee, which is owned—in whole or in majority—by Defendant Pat Temple and through which Defendant Temple maintains his ownership of LaSalle Corrections.

10. Defendant Chris Bell is LaSalle's Regional Warden for the State of Texas who, by his own admission, "is responsible for all operations at the Texas facilities," which necessarily includes operations relating to training and supervision of staff and inmates' access to medical care at the Bi-State Jail.

11. Defendant Robert Page is an employee of LaSalle Corrections and/or LaSalle Southwest, and he is the warden at Bi-State Jail, tasked with ensuring that jail staff are properly trained and supervised, that inmates are properly supervised and treated for medical emergencies, and that the day-to-day operations of the Bi-State Jail comply with the Texas Minimum Jail Standards.

12. Defendant Brittany Johnson was, at all times relevant to this complaint, an employee of LaSalle at the Bi-State Jail, where she worked as a Licensed Vocational Nurse and was responsible for, *inter alia*, the supervision, care, and treatment of inmates with emergency medical needs.

13. Defendant Regina Lynch was, at all times relevant to this complaint, an employee of LaSalle at the Bi-State Jail, where she worked as a Registered

Nurse with responsibility for the supervision of all other nurses at Bi-State Jail.

14. Defendants Jane Does #1-10 are female employees, agents, or representatives of LaSalle who worked at the Bi-State Jail during the period when Morgan Angerbauer was incarcerated. Plaintiff reserves the right to amend this complaint to reflect the identities of the Jane Doe defendants as the same become known to Plaintiff.

15. Defendants John Does #1-10 are male employees, agents, or representatives of LaSalle who worked at the Bi-State Jail during the period when Morgan Angerbauer was incarcerated. Plaintiff reserves the right to amend this complaint to reflect the identities of the John Doe defendants as the same become known to Plaintiff.

16. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331, as the case presents a federal question based on the violation of Morgan Angerbauer's civil rights; 28 U.S.C. § 1332, as all of the Defendants are diverse from the Plaintiff and the amount in controversy exceeds $75,000; and 28 U.S.C. § 1337, as the state-law claims are closely related to the federal-law claims.

17. Venue is proper in this Court, as most or all of the acts and omissions forming the basis for the causes of action occurred in Bowie County, TX.

## FACTS COMMON TO ALL CLAIMS

18. LaSalle Corrections; LaSalle Corrections, LLC; and/or LaSalle Southwest are responsible for the day-to-day management of the Bi-State Jail pursuant to a contract with Texarkana, TX; Bowie County, TX; and Texarkana, AR.

19. Pursuant to that contract, LaSalle is required to incarcerate, *inter alia*, inmates and pretrial detainees arrested by, or on behalf of, the Texarkana (AR) Police Department.

20. LaSalle is required to ensure that the detention of all inmates and pretrial detainees at the Bi-State Jail is done in accordance with Texas Minimum Jail Standards, as well as in accordance with the United States Constitution and all other applicable laws.

21. LaSalle's duties under the contract specifically obligate LaSalle to provide medical services for inmates and detainees at the Bi-State Jail.

22. LaSalle is also required under the contract to maintain a contract with a licensed medical doctor; at all times relevant to this complaint, LaSalle maintained a contract with Dr. Jagdish Shah of Bonham, TX, for medical services at Bi-State Jail.

23. Morgan Angerbauer was a Type I diabetic, and LaSalle was aware of Ms. Angerbauer's diabetes prior to June 28, 2016.

24. On June 28, 2016, Morgan Angerbauer was arrested on an outstanding warrant and was transported to Bi-State Jail, where LaSalle took over custody and care of Ms. Angerbauer.

25. On or about June 28, Ms. Angerbauer was transferred from a general lockup pod to a medical observation cell.

26. On June 29, Ms. Angerbauer's the blood-sugar-testing machine used by LaSalle record Ms. Angerbauer's blood sugar as "HI" at 11:15 a.m.

27. A "HI" reading on an Accucheck blood-testing device indicates that the test subject's blood sugar is above the testing range of the device.

28. Ms. Angerbauer was given fifteen units of injectable insulin following this "HI" reading. She was not given any intravenous fluids.

29. At 1:45 p.m. on June 29, Ms. Angerbauer's blood sugar registered at 487. She was given ten units of injectable insulin and no intravenous fluids.

30. At 2:45 p.m. on June 29, Ms. Angerbauer's blood sugar registered at 178. Defendant Johnson did not give her any insulin or any intravenous fluids.

31. Despite a recent history of high blood-sugar readings, Ms. Angerbauer's blood sugar was not tested again until 3:20 a.m. on June 30, when it again registered as "HI." She was given fifteen units of injectable insulin and no intravenous fluids.

32. Ms. Angerbauer's blood sugar was next tested at 5:30 a.m. on June 30, when it again registered "HI." She was given fifteen units of injectable insulin and no intravenous fluids.

33. For some reason, Ms. Angerbauer's blood sugar was not tested again for five hours.

34. At 10:30 a.m. on June 30, Ms. Angerbauer's blood sugar allegedly tested at 74. No follow-up test was done to ensure that result was accurate. She was given no insulin or intravenous fluids.

35. At 4:30 p.m. on June 30, Ms. Angerbauer refused to test her blood sugar. The nurse on duty at the time left without requiring a test.

36. Around 5:15 p.m. on June 30, Ms. Angerbauer began to beat on the door of the medical cell. When Defendant Johnson approached, Ms. Angerbauer asked to have her blood sugar tested because it felt higher than normal.

37. Defendant Johnson refused to test Ms. Angerbauer's blood sugar at this point, telling Angerbauer that it was up to Defendant Johnson as to when the blood sugar would be tested.

38. Ms. Angerbauer spent the next several hours pounding on the door of the medical cell, yelling for help, and expressing a need to test her blood sugar, which Defendant Johnson refused to do.

39. During the time that Ms. Angerbauer was pounding on the cell door and calling for help, one or more of the Doe defendants observed her actions and did nothing to help Ms. Angerbauer, despite all LaSalle employees' being authorized to refer an inmate to the emergency room in medical emergencies.

40. Around 4:00 a.m. on July 1, trusties at the jail noticed Ms. Angerbauer apparently unconscious on the medical cell floor and called for help.

41. Defendant Johnson came to the medical cell and attempted to take a blood-sugar reading, but received a result of "E-3" on multiple tests.

42. A reading of "E-3" on an Accucheck device means that the blood sugar is extremely high.

43. Defendant Johnson inexplicably gave Ms. Angerbauer glucose, rather than insulin, after multiple E-3 readings. Ms. Angerbauer passed away shortly thereafter.

44. According to the State Crime Lab, Ms. Angerbauer's cause of death was diabetic ketoacidosis. Her blood sugar at the time of her death was 813.

45. LaSalle performed an internal investigation into Ms. Angerbauer's death, in which Defendant Johnson fabricated a story that omitted her refusal to test Ms. Angerbauer's blood sugar on June 30, and a LaSalle employee signed off on Ms. Johnson's report.

46. Defendant Johnson's report was contradicted by the Texarkana (AR) Police Department investigation of Ms. Angerbauer's death, which ultimately led to the arrest of Johnson on charges of negligent homicide.

## CLAIM 1: VIOLATION OF 42 U.S.C. § 1983

47. Plaintiff realleges and incorporates by reference every fact and allegation in paragraphs 1 through 46, *supra*, as if set forth fully herein.

48. By virtue of operating the Bi-State Jail, Defendants LaSalle Management, LaSalle Corrections, and LaSalle Southwest are responsible for the jailing, safekeeping, and supervision of detainees and inmates in the custody of the jail. These duties include a responsibility that all inmates and detainees be given adequate medical care and that the conditions of incarceration do not violate the detainees/inmates constitutional rights.

49. Defendants Cooper, McConnell, Temple, WMC Enterprises, KPL, Bell, and Page—individually and collectively—are responsible for the operation of the Bi-State jail, including establishing and ensuring enforcement of the policies, procedures, rules, and regulations for the operation of the jail. These defendants are required at all times to be fully informed on all aspects of the operations of the Bi-State Jail.

50. Defendants Cooper, McConnell, Temple, WMC Enterprises, KPL, Bell, and

Page—individually and collectively—are responsible for the hiring, training, supervision, discipline, and control of all employees and staff of the Bi-State Jail. By extension, these defendants were, at all times relevant to this complaint, responsible for all actions or inactions done under color of law by employees of the Bi-State Jail that resulted in the deprivation of Ms. Angerbauer's constitutional rights.

51. Defendant Johnson was tasked with observing inmates/detainees in the medical observation cells and ensuring that all detainees/inmates received proper, adequate medical attention. She was required to follow all policies and procedures regarding medical emergencies, interaction with diabetic inmates, and administration of medications.

52. Defendant Johnson was further required to abide by all nursing rules, procedures, regulations, and guidelines in treating Ms. Angerbauer.

53. Defendant Lynch was tasked with ensuring that all nurses employed by LaSalle at the Bi-State Jail were properly trained and supervised such that the nurses knew the relevant policies and procedures and inmates/detainees received proper medical attention at all times.

54. Defendants Jane Does #1-10 were required to follow all policies and procedures regarding inmates/detainees' healthcare, medical emergencies,

observation, and documentation of inmates/detainees.

55. Defendants John Does #1-10 were required to follow all policies and procedures regarding inmates/detainees healthcare, medical emergencies, observation, and documentation of inmates/detainees.

56. At the time that Defendant Johnson arrived at Bi-State Jail on June 30, she knew or should have known through reasonable efforts that Ms. Angerbauer's blood sugar had repeatedly been elevated over the previous three days and that refusing to test Ms. Angerbauer's blood sugar amounted to gross negligence.

57. The Eighth Amendment requires that inmates be provided humane conditions of confinement, and one condition of confinement is the medical attention given to a prisoner. Jail officials violate the Eighth Amendment when they act deliberately indifferent either to a prisoner's existing serious medical needs or to conditions posing a substantial risk of serious future harm.

58. Deliberate indifference occurs if a jail official knows an inmate has a serious medical need but deliberately disregards it. Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment.

59. Defendants Cooper, McConnell, Temple, WMC Enterprises, KPL, Bell, and Page—individually and collectively—have been aware of several deaths that

have occurred at Bi-State Jail in recent years due to a lack of proper medical attention, yet they allow Bi-State Jail to remain under contract with a doctor who is over 130 miles away and cannot provide immediate medical attention as may be necessary.

60. All Defendants, individually and in concert, had knowledge of and were deliberately indifferent to:

a. The ongoing pattern and practice of inmate/detainee deaths due to lack of proper medical attention at the Bi-State Jail, which have occurred both before and since the death of Ms. Angerbauer;

b. The ongoing failure to implement adequate policies, guidelines, and procedures—and inadequate training in the implementation of existing policies, guidelines, and procedures—to reasonably ensure the safety of detainees who suffered from a medical emergency while in custody;

c. Failure to follow existing policies, guidelines, and procedures regarding detainees' medical needs during the time that Morgan Angerbauer was detained;

d. Failure to provide necessary and adequate medical treatment for detainees who suffer from a medical emergency;

e. Failure to properly monitor the personnel within the Bi-State Jail;

f.  Failure to ensure that Bi-State Jail medical personnel were trained in addressing medical emergencies in a medically appropriate manner, including prompt referrals to the emergency room when necessary; and

g.  Failure to correct known deficiencies in the Bi-State Jail's operations so that the jail complied with all required minimum standards.

61. Defendants' acts and omissions created a known and substantial risk of serious and deadly harm to Morgan Angerbauer and others like her, as Ms. Angerbauer's death was one of at least four in the Bi-State Jail in just over one year.

62. Defendants Cooper, McConnell, Temple, WMC Enterprises, KPL, Bell, and Page—individually and collectively—violated Ms. Angerbauer's civil rights because:

a.  They were aware of repeated failures to provide for the serious medical needs of inmates, they took inadequate steps to address these failures;

b.  They were aware of the need to properly train Bi-State Jail employees in following jail policies and procedures, and they failed to provide such training to such an extent that Bi-State Jail employees were wholly unfamiliar with how to address Ms. Angerbauer's serious medical emergency.

63. The failures of Defendants Cooper, McConnell, Temple, WMC Enterprises, KPL, Bell, and Page—individually and collectively—to address the needs and failures of the Bi-State Jail and its personnel were so severe and so egregious as to reach the level of gross negligence or deliberate indifference to the deprivation of Ms. Angerbauer's constitutional rights. These failures occurred under color of law and violated Ms. Angerbauer's 5th, 8th, and/or 14th Amendment rights.

64. Further, and more specifically, the failure of Defendants Cooper, McConnell, Temple, WMC Enterprises, KPL, Bell, and Page to train Bi-State Jail staff and ensure that medical attention is prompt and accurate was so egregious, in light of the surrounding facts, that it amounts to deliberate indifference to the rights of persons with whom Bi-State Jail employees come into contact.

65. Defendants Cooper, McConnell, Temple, WMC Enterprises, KPL, Bell, and Page have known of the ongoing constitutional violations at Bi-State Jail for years, and their failure to remedy the known unconstitutional conduct of Bi-State Jail staff makes these defendants liable for the deprivation of Ms. Angerbauer's rights.

66. Defendant Johnson violated Ms. Angerbauer's constitutional rights by refusing to provide medical attention, even when requested, and even when

Johnson was aware of Ms. Angerbauer's diabetes and consistently high blood-sugar readings. This failure to provide medical attention amounts to cruel and unusual punishment, in violation of the 8th Amendment to the United States Constitution, as well as deprivation of life without due process, in violation of the 5th and 14th Amendments.

67. Defendants Jane Does #1-10 and John Does #1-10 violated Ms. Angerbauer's constitutional rights by failing to provide medical attention to Ms. Angerbauer or to refer Ms. Angerbauer to an emergency room when it became clear that Defendant Johnson was not providing attention. This failure to provide medical attention amounts to cruel and unusual punishment, in violation of the 8th Amendment to the United States Constitution, as well as deprivation of life without due process, in violation of the 5th and 14th Amendments.

## CLAIM 2: NEGLIGENCE

68. Plaintiff realleges and incorporates by reference every fact and allegation in paragraphs 1 through 67, *supra*, as if set forth fully herein.

69. Defendants Johnson, John Does #1-10, Jane Does #1-10, Page, and Lynch, by virtue of their employment with LaSalle at Bi-State Jail, had a duty to Ms. Angerbauer to ensure that she received adequate medical care and that she was not exposed to undue risk of harm or injury.

70. These defendants breached this duty by failing to refer Ms. Angerbauer to an emergency room on June 29 when her blood-sugar readings were consistently elevated, by refusing to provide medical attention to Ms. Angerbauer on June 30, and by allowing Ms. Angerbauer to suffer and die on the floor of the medical observation cell.

71. The breach of this duty was the actual and proximate cause of Ms. Angerbauer's death, as diabetic ketoacidosis occurred only because of these defendants' breach of their duties to Ms. Angerbauer.

72. As a result of this breach, Ms. Angerbauer suffered compensable injury, in the form of pain and suffering, personal injury, and death.

### CLAIM 3: WRONGFUL DEATH

73. Plaintiff realleges and incorporates by reference every fact and allegation in paragraphs 1 through 72, *supra*, as if set forth fully herein.

74. Defendants Johnson, Jane Does #1-10, and John Does #1-10 were, at all times relevant to this complaint, agents or servants of Defendants Cooper, McConnell, Temple, WMC Enterprises, and KPL.

75. Ms. Angerbauer died solely because of the wrongful act, neglect, carelessness, and/or unskillfulness of Defendants Johnson, Jane Does #1-10, and John Does #1-10 as described above. Accordingly, under Texas law, Defendants Cooper,

McConnell, Temple, WMC Enterprises, and KPL are liable for the wrongful death of Ms. Angerbauer.

76. Ms. Angerbauer died without a spouse or children, so this wrongful-death claim is brought by Plaintiff, as special administrator, on behalf of Ms. Angerbauer's surviving parents as that term is used in the wrongful-statute.

77. The arrest of Defendant Johnson for criminal negligence demonstrates civil gross negligence in the death of Ms. Angerbauer; accordingly, exemplary damages are also sought under the wrongful-death statute.

## PRAYER FOR RELIEF

78. Plaintiff seeks compensatory, exemplary, hedonic, pain-and-suffering, and punitive damages in amounts to be determined by a jury based on Defendants' violations of Ms. Angerbauer's civil rights.

79. Plaintiff seeks compensatory, exemplary, hedonic, pain-and-suffering, and punitive damages in amounts to be determined by a jury based on Defendants' negligent acts which were the actual and proximate cause of Ms. Angerbauer's death.

80. Plaintiff seeks compensatory, exemplary, hedonic, pain-and-suffering and punitive damages in amounts to be determined by a jury for the wrongful death of Morgan Angerbauer, with such damages under this cause of action enuring

to the benefit of Ms. Angerbauer's parents and not becoming part of Ms. Angerbauer's estate.

81. Plaintiff further seeks any other relief to which she or Ms. Angerbauer may be entitled, in law or in equity, against any of the above-named Defendants, individually or collectively.

82. Plaintiff reserves the right to amend this Complaint as may be proper or necessary.

WHEREFORE the Plaintiff, Jennifer Houser, as Special Administrator of the Estate of Morgan Angerbauer, prays that this Court will grant the relief requested herein.

Respectfully submitted,

**/s/ Matthew D. Campbell**
Ark. Bar No. 2009032
PINNACLE LAW FIRM, PLLC
P.O. Box 7469
Little Rock, AR 72217
P: (501) 396-9246
F: (501) 421-0189
matt@pinnaclelawfirm.com
*Attorney for Plaintiff*