IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| VICTORIA LEIGH, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF MORGAN ANGERBAUER, DECEASED; JENNIFER HOUSER, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF M.A., A MINOR; ANDY HOUSER; and HUNTER ANGERBAUER        PLAINTIFFS | § § § § § § § § | |
| vs. | § § | Civil Action No. 5:16CV129 (Jury) |
| SOUTHWESTERN CORRECTIONAL, LLC d/b/a LaSALLE CORRECTIONS, LLC AND LaSALLE SOUTHWEST CORRECTIONS; LaSALLE MANAGEMENT COMPANY; BOWIE COUNTY, TEXAS; CITY OF TEXARKANA, ARKANSAS; BRITTANY JOHNSON, INDIVIDUALLY; REGINA LYNCH, INDIVIDUALLY; JANE DOES #1-10; and JOHN DOES #1-10        DEFENDANTS | § § § § § § § § § § § | |

## PLAINTIFFS' FOURTH AMENDED COMPLAINT

COME NOW Plaintiffs Victoria Leigh, as Special Administrator of the Estate of Morgan

Angerbauer, deceased; Jennifer Houser, Individually and as Parent and Natural Guardian of M.A.,

a minor; Andy Houser; and Hunter Angerbauer, by and through their undersigned counsel, and for

their Fourth Amended Complaint, state:

## I.  INTRODUCTION

1.      This is a civil rights action brought pursuant to 42 U.S.C. § 1983 and Arkansas law resulting

from events that happened during the pre-trial detention of Morgan Angerbauer at the Bi-

State Justice Center Jail, which sits on the border of Texas and Arkansas, and is run by a private, for profit correctional corporation. The events giving rise to this complaint began on June 28, 2016, and culminated in the unnecessary death of Morgan Angerbauer on July 1, 2016. Defendants caused Ms. Angerbauer's death by violating her rights under the Fourteenth Amendment to the United States Constitution and under the laws of the state of Arkansas. Specifically, defendants deprived Ms. Angerbauer of medication and adequate medical care; ignored her ongoing serious medical needs, including her dangerously high blood sugar levels; failed to monitor her despite her severe and life-threatening medical condition; failed to timely call for emergency medical services; and otherwise forced her to endure extreme and needless pain and suffering, resulting in her death.

2.      Defendant Johnson's license to practice as an LVN has been surrendered. She has also been found guilty of negligent homicide for her conduct resulting in the death of Morgan Angerbauer. This action seeks to hold defendants liable for Morgan Angerbauer's death, which was caused by a disturbing pattern of ignoring the constitutional rights of citizens in order for the corporate defendants to turn a profit.


## II.  JURISDICTION AND VENUE

3.      This Court has original subject matter jurisdiction over the Plaintiffs' civil rights claims under 42 U.S.C. § 1983, pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). This Court has supplemental jurisdiction over the Plaintiffs' related state claims pursuant to 28 U.S.C. § 1367(a).

4.      This Court has personal jurisdiction over each of the individual named defendants because

they either (1) reside in this judicial district, or (2) they have sufficient minimum contacts in the state of Texas, and the exercise of personal jurisdiction would not offend traditional notions of fair play and substantial justice.

5.  Venue is proper in this jurisdiction under 28 U.S.C. § 1391(b)(3) because all defendants are subject to this Court's personal jurisdiction in this action.

6.  Venue is also proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), as a substantial part of the acts and omissions forming the basis for the causes of action occurred in Bowie County, Texas.

## III.  PARTIES

A.  <u>PLAINTIFFS</u>

7.  Plaintiff Victoria Leigh is a United States citizen and resident of the state of Arkansas. Leigh was appointed as Substitute Special Administrator of the Estate of Morgan Angerbauer, deceased, by the Circuit Court of Miller County, Arkansas, in probate cause no. 46-PR-16-146 on May 31, 2017. Leigh brings claims on behalf of the Estate of Morgan Angerbauer, deceased, and for the benefit of all wrongful death beneficiaries as defined in the Arkansas Wrongful Death Act. These beneficiaries include the other Plaintiffs named herein.

8.  Plaintiff Jennifer Houser is a United States citizen and resident of the state of Arkansas. Ms. Houser is the surviving mother of Morgan Angerbauer and brings her claims individually and as parent and natural guardian of M.A., a minor and surviving sister of Morgan Angerbauer.

9.  Plaintiff Andy Hunter Houser is a United States citizen and resident of the state of Arkansas. Mr. Houser is the surviving stepfather of and stood in loco parentis to Morgan Angerbauer, deceased, and brings his claims individually.

10. Plaintiff Hunter Angerbauer is a United States citizen and resident of the state of Arkansas. Ms. Houser is a surviving sister of Morgan Angerbauer, deceased, and brings her claims individually.

B. <u>DEFENDANTS</u>

11. Defendant Southwest Correctional, LLC d/b/a LaSalle Corrections, LLC and LaSalle Southwest Corrections (hereinafter "LaSalle") is a Texas limited liability company doing business in this judicial district for purposes of profit. LaSalle is considered a "person" under 42 U.S.C. § 1983 and Ark. Code Ann. § 16-123-105. LaSalle, which is owned, controlled or managed by Defendant LaSalle Management Company, LLC, manages the day-to-day operations of the Bi-State Justice Center Jail. LaSalle is a final policy maker for Bowie County for purposes of providing jail-related services and meeting the needs of its convicted inmates and pretrial detainees. LaSalle may be served through its attorneys of record herein. At all material times, this defendant was acting under color of state law.

12. Defendant LaSalle Management Company, LLC ("LaSalle Management") is a Louisiana limited liability company doing business in this judicial district for purposes of profit. LaSalle Management is considered a "person" under 42 U.S.C. § 1983 and Ark. Code Ann. § 16-123-105. LaSalle Management is the parent company of Defendant LaSalle and is responsible for ensuring that its subsidiary meets its constitutional obligations in running the jail. LaSalle Management may be served with process by and through its attorney of record herein. At all material times, this defendant was acting under color of state law.

13. Defendant Bowie County is a governmental entity and a political subdivision of the state of Texas and is a "person" for purposes of 42 U.S.C. § 1983 and Ark. Code Ann. § 16-123-105.

Bowie County is responsible for opening the Bi-State Justice Center Jail ("Bi-State Jail"), which sits on the border of Texas and Arkansas in Texarkana, and is physically located on both sides of the state line. The Bi-State Jail houses pretrial detainees and convicted inmates from both Texas and Arkansas. All pretrial detainees confined at the Bi-State Jail are entitled to constitutional protections under the Fourteenth Amendment to the United States Constitution, including the right to constitutionally-adequate medicare care. Bowie County has a non-delegable duty to ensure that the Bi-State Jail meets such constitutional requirements. This defendant may be served through its County Judge, the Honorable James Carlow, at 710 James Bowie Drive, New Boston, Texas 75570.

14. Defendant City of Texarkana, Arkansas is a governmental entity and a political subdivision of the state of Arkansas, and is a "person" for purposes of 42 U.S.C. § 1983 and Ark. Code Ann. § 16-123-105. City of Texarkana, Arkansas shares responsibility over the Bi-State Jail with Bowie County and routinely arrests and brings Arkansas detainees, such as Morgan Angerbauer, to the Bi-State Jail for pretrial detention and post-conviction sentencing. Texarkana, Arkansas has a non-delegable duty to ensure that the Bi-State Jail satisfies its constitutional duties to citizens in its custody. Morgan Angerbauer was a citizen of Texarkana, Arkansas at the time of her death. This defendant may be served through Mayor Ruth Penney Bell at 216 Walnut Street, Texarkana, Arkansas 71854.

15. In February of 2013, Defendant Bowie County, with the approval of Defendant City of Texarkana, Arkansas, contracted with a private, for-profit correctional corporation known as Southwestern Correctional, LLC to operate and manage all aspects of the Bi-State Jail, including the provision of medical care to the jail's population of pretrial detainees and post-

conviction prisoners. Pursuant to the contract, Bowie County is obligated to conduct monthly inspections of the Bi-State Jail. Although Defendants Bowie County and City of Texarkana, Arkansas sought to privatize the operation of their jail by delegating their final policy-making authority to Southwestern Correctional, LLC, the defendants cannot contract away their constitutional obligations and are liable for any unconstitutional corporate customs or policies that resulted in harm to any detainees and inmates confined in the jail.

16.     Defendant Brittany Johnson is, on information and belief, a citizen of the state of Texas. Johnson was, at all times relevant to this complaint, an employee of LaSalle at the Bi-State Jail, where she worked as a licensed vocational nurse and was responsible for, inter alia, the supervision, care and treatment of inmates with emergency medical needs. Defendant Johnson may be served through her counsel of record herein.

17.     Defendant Regina Lynch is, on information and belief, a citizen of the state of Texas. Lynch was, at all material times relevant to this complaint, an employee of LaSalle at the Bi-State Jail, where she worked as a registered nurse and was responsible for the supervision of all other nurses at the Bi-State Jail, including Defendant Johnson. Defendant Lynch may be served through her counsel of record herein.

18.     Defendants Jane Does #1-10 are female employees, agents or representatives of LaSalle who worked at the Bi-State Jail during the period when Morgan Angerbauer was incarcerated. Plaintiffs reserve the right to amend this complaint to reflect the identities of the Jane Doe Defendants as the same become known.

19.     Defendants John Does #1-10 are male employees, agents or representatives of LaSalle who worked at the Bi-State Jail during the period when Morgan Angerbauer was incarcerated.

Plaintiffs reserve the right to amend this complaint to reflect the identities of the John Doe Defendants as the same become known.

20. All defendants were, at all material times, acting under color of state law.

## IV.  FACTS APPLICABLE TO ALL CLAIMS

21. LaSalle and LaSalle Management are responsible for the day-to-day management of the Bi-State Jail pursuant to a contract with Texarkana, Texas; Bowie County, Texas, and Texarkana, Arkansas.

22. Pursuant to that contract, LaSalle and LaSalle Management are required to incarcerate, inter alia, inmates and pretrial detainees "pursuant to contracts between" LaSalle, LaSalle Management and Texarkana, Arkansas.

23. LaSalle and LaSalle Management are required to ensure that the detention of all inmates and pretrial detainees at the Bi-State Jail is done in accordance with Texas Minimum Jail Standards, as well as in accordance with the United States Constitution and all other applicable law.

24. LaSalle and LaSalle Management's duties under the contract specifically obligate them to provide:

> All operation and management services, and all staffing, record keeping, programs, supervision, training, security, prisoner care, inmate services[,] and other services and tangible things needed to operate and manage the Facility in compliance with the standards, regulations and requirements of the Texas Commission of Jail Standards, applicable federal or state law, [and] the requirements of the prisoner housing contracts with contracting authorities.

25. LaSalle is also required under the contract to maintain a contract with the a licensed medical

doctor. At all times relevant to this complaint, LaSalle maintained a contract with Dr. Jagdish Shah of Bonham, Texas for medical services at the Bi-State Jail. Bonham, Texas is approximately 134 miles from Texarkana, Texas. Pursuant to LaSalle policies and procedures, all LaSalle employees are empowered to refer an inmate or detainee for outside emergency medical treatment. They are also required by the Fourteenth Amendment to the United States Constitution to do so.

26. Morgan Angerbauer was a Type I diabetic. LaSalle as aware of Ms. Angerbauer's diabetes prior to June 28, 2016, as she had been previously incarcerated at the Bi-State Jail and the medical records from her prior incarceration specifically noted her diabetic condition.

27. On June 28, 2016, Morgan Angerbauer was arrested by the Texarkana, Arkansas Police Department on an outstanding warrant related to a non-violent drug offense and transported to the Bi-State Jail, where LaSalle took over custody and care of Ms. Angerbauer. She was placed in a cell in Q-Pod.

28. On June 29, 2016, the Accu-Chek blood sugar testing device used by LaSalle nurse Tiffany Venable  recorded Ms. Angerbauer's blood sugar as "HI" at 11:15 a.m. A "HI" reading on an Accu-Chek blood-testing device indicates that the test subject's blood sugar is above the testing range of the device (500 mg/dl). This means Ms. Angerbauer's blood sugar level was at least 4-5 times higher than normal. Ms. Angerbauer was given fifteen unites of injectable insulin following this "HI" reading. She was not given any intravenous fluids.

29. At 1:45 p.m. on June 29, 2016, Ms. Angerbauer's blood sugar was tested by LaSalle nurse Tiffany Venable and it registered at 487 mg/dl. She was given ten units of injectable insulin and no intravenous fluids.

30. At 2:35 p.m. on June 29, 2016, LaSalle's records state that Ms. Angerbauer's blood sugar was tested by LaSalle nurse Kelley Bowen and it registered at 178. No insulin or intravenous fluids were given at that time.

31. Despite a recent history of extremely high blood sugar readings, Ms. Angerbauer's blood sugar was not tested again until 3:20 a.m. on June 30, 2016, when it was tested by Defendant Johnson and it again registered as "HI." She was given fifteen units of injectable insulin and no intravenous fluids. Defendant Johnson was aware at this time that Ms. Angerbauer's blood sugar was again higher than the testing range of the device.

32. Ms. Angerbauer's blood sugar was next tested two hours later at 5:30 a.m. on June 30, 2016 when it again registered "HI." This was the third time her blood sugar had been tested above the limits of the testing device within two days of her incarceration. The other two readings were well above average blood sugar levels.

33. Ms. Angerbauer's blood sugar was not tested again for five hours. According to LaSalle's blood sugar monitoring log entry made by LaSalle nurse Tiffany Venable, at 10:30 a.m on June 30, 2016, Ms. Angerbauer's blood sugar tested at 74. No follow up test was done to ensure that result was accurate. She was given no insulin or intravenous fluids. Ms. Angerbauer was moved from Q-Pod to a medical observation cell.

34. According to the blood sugar monitoring log, at 4:30 p.m. on June 30, 2016, Ms. Angerbauer "refused" to test her blood sugar. The nurse on duty at the time (Tiffany Venable) left her shift without requiring a test.

35. Forty-five minutes later, at approximately 5:15 p.m on June 30, 2016, Ms. Angerbauer began to beat on the door of the medical observation cell. When Defendant Johnson approached,

Ms. Angerbauer asked to have her blood sugar tested because it felt higher than normal. Defendant Johnson refused to test Ms. Angerbauer's blood sugar at that point, telling her, "No, that's not how it works" and that it was up to Defendant Johnson as to when the blood sugar would be tested. Ms. Angerbauer's blood sugar had not been tested for almost seven hours. The benefit of the insulin provided at 10:30 a.m. had long since worn off. Defendants were aware of this fact yet failed to take any action. It would have only taken a few minutes for Defendant Johnson to determine whether Ms. Angerbauer's blood sugar was once again dangerously high.

36.     Ms. Angerbauer spent the next several hours pounding on the door of the medical observation cell, yelling for help, and expressing a need to test her blood sugar. Defendant Johnson refused to do. According to the Texas State Board of Nursing, Defendant's Johnson's conduct "was likely to injure the inmate in that significant changes in the inmate's status may have gone undetected and prevented a timely intervention."

37.     During the time that Ms. Angerbauer was pounding on the cell door and calling for help, one or more of the Doe Defendants observed her actions and did nothing to help Ms. Angerbauer despite all LaSalle employees being authorized to refer an inmate to the emergency room for medical emergencies. Due to the defendants' inactions, keytones had begun to build up in Ms. Angerbauer's bloodstream. The process of ketoacidosis had begun.

38.     At approximately 4:00 a.m. on July 1, 2016, trustees at the jail noticed Ms. Angerbauer apparently unconscious on the medical observation cell floor and called for help. It had been 17½ hours since her blood sugar had been tested.  Defendant Johnson came to the medical observation cell at 4:14 a.m. and attempted to take a blood sugar reading, but received a

result of "E-3" on multiple tests. A reading of "E-3" on an Accu-Chek device means that the blood sugar is extremely high.

39.     Video from the surveillance camera in the medical observation cell and a hand-held camera demonstrates that Defendant Johnson waited over forty minutes before beginning CPR on Ms. Angerbauer or calling 911. She did so with full knowledge of Ms. Angerbauer's blood sugar testing history and that time was of the essence if Ms. Angerbauer's life was to be saved. During that time Defendant Johnson inexplicably gave Ms. Angerbauer glucose rather than insulin after multiple E-3 readings. Glucose causes blood sugar levels to rise, not fall. Ms. Angerbauer passed away shortly thereafter. According to the State Crime Lab, Ms. Angerbauer's cause of death was diabetic ketoacidosis. Her blood sugar at the time of her death was 813.

40.     According to the Texas State Board of Nursing, Defendant Johnson's conduct "resulted in a delay in emergency treatment for the patient that was needed to prevent further complications, and may have contributed to the patient's subsequent demise." Importantly, Ms. Angerbauer had survived many instances where her blood sugar level was significantly higher than 813. This is because she was always treated for the condition. Defendants acted in a manner that prohibited timely medical treatment, which resulted in the death of Ms. Angerbauer.

41.     LaSalle performed an "internal investigation" into Ms. Angerbauer's death in which Defendant Johnson fabricated a story that omitted her refusal to test Ms. Angerbauer's blood sugar between 5:15 p.m. on June 30th and when Ms. Angerbauer was found unresponsive on July 1, 2016. LaSalle employee signed off on Johnson's report. The entire "internal

investigation" took about an hour, contained no attempts by the investigators to compare statements to the video evidence. This resulted in LaSalle employees signing off on investigative reports that contain outright fabrications that attempted to absolve LaSalle and all its personnel of any liability.

42. Multiple LaSalle employees, including Defendant Johnson, made false written statements that Defendant Johnson entered the medical observation cell at 4:40 a.m. on July 1, 2016. As noted above, she entered the cell at 4:14 a.m. and did not call for an ambulance to be summoned until almost 5:00 a.m., some 46 minutes later. Multiple LaSalle employees falsely stated the time line in an unlawful attempt to protect defendants from liability in this matter.

43. Defendant Johnson's report (as well as other statements of LaSalle employees) was contradicted by the Texarkana, Arkansas Police Department investigation of Ms. Angerbauer's death, which ultimately led to the arrest of Johnson on charges of negligent homicide.

44. In November of 2017, Defendant Johnson pled guilty to negligent homicide in connection with the death of Morgan Angerbauer.


## V. ADDITIONAL FACTS APPLICABLE TO LaSALLE CORPORATE DEFENDANTS

45. The unconstitutional conduct in question was carried out in accordance with the official policies, procedures, practices and customs of the corporate defendants (LaSalle and LaSalle Management).

46. The corporate defendants engaged in and permitted to exist a pattern, practice or custom of unconstitutional conduct towards detainees and inmates with serious medical needs,

including denying prescription medication and failing to secure medical care or such individuals. Before (and since) Morgan Angerbauer's detention and death, there have been numerous instances in the Bi-State Jail (and in other correctional facilities managed by LaSalle) of inmates being denied medications and deprived of needed medical care by LaSalle and its agents or employees, resulting in disability and death.

47.   By way of example, less than one year prior to the death of Morgan Angerbauer, the corporate defendants' failed to conduct blood pressure checks and blood sugar tests leading to the death of Michael Sabbie who, like Ms. Angerbauer, was a diabetic.[1] Even after the death of Mr. Sabbie, the corporate defendants continued in their pattern of misconduct and failure to meet the medical needs of insulin-dependent diabetics, including Morgan Angerbauer. LaSalle also failed to make any changes to its practices, procedures and customs for treating diabetic inmates/detainees. No steps were taken to correct the nursing staff's failure to follow written medical protocols and failure to meet nursing standards of care. Incredibly, no internal review of LaSalle's deplorable medical practices leading to the death of Mr. Sabbie was undertaken. The practices continued and Morgan Angerbauer died less than one year after Mr. Sabbie.

48.   Even after Morgan Angerbauer's death these unconstitutional policies, procedures and practices continue. In April of 2018, a detainee in the Bi-State Jail suffered a stroke. Despite repeated pleas for help by other detainees, trustees and family members of the stroke victim, LaSalle personnel, including the nurses on duty, failed to provide any treatment or call an ambulance for approximately 24 hours, again exhibiting a total disregard for the medical

---

1      See *Sabbie v. Southwestern Correctional, LLC, et al,* No. 5:17CV113.

needs of detainees.

49. The failure to secure medical care for Ms. Angerbauer was motivated by constitutionally impermissible profit-driven reasons. The corporate defendants had a policy, practice and custom of budgeting and spending inadequate amounts on jail medical care to make higher profits under their contract. It was foreseeable that the insufficient jail medical budgeting and spending would cause harm to inmates/detainees in need of medical care.

50. The corporate defendants also had a pattern, practice and custom of failing to properly monitor inmates and detainees with serious medical and/or mental health issues. This includes a practice of failing to conduct 30-minute checks mandated by the Texas Commission on Jail Standards and internal policies. The commission cited the Bi-State Justice Jail for failing to comply with these mandated checks shortly after the death of Mr. Sabbie in 2015, and again after the death of Morgan Angerbauer. Other facilities operated by LaSalle have been written up for similar non-compliance. In addition, LaSalle corrections officers in Texas have engaged in a pattern of falsifying documents, indicating they conducted such checks when in fact they did not. LaSalle corrections officers have been arrested following the death of yet another inmate for falsifying documents to make it appear that they conducted mandated headcounts when they did not in fact do so.

51. The corporate defendants failed to adequately train their personnel on recognizing and responding to the serious medical needs of inmates/detainees. The need for this training was obvious because LaSalle hired detention staff with little or no corrections experience, and it was foreseeable that the lack of such training would cause harm to inmates/detainees. The corporate defendants also failed to train their corporate nursing staff on how to conduct

adequate medical examinations, including the need to conduct blood sugar tests where indicated. The corporate defendants also failed to train their corporate nursing staff concerning contacting emergency medical services in a timely manner when a patient had become unresponsive due to dangerous blood sugar levels. The need for this training was obvious because LaSalle staff the Bi-State Jail with licenced vocational nurses rather than registered nurses, and it was foreseeable that such training deficiencies would cause harm to inmates/detainees.

52.     The corporate policies, practices and customs described above were the moving force behind Morgan Angerbauer's suffering and death, as well as the constitutional violations alleged herein. The corporate defendants also ratified the unconstitutional conduct of their employees and agents with respect to the detention and death of Ms. Angerbauer. Despite clear video evidence of unconstitutional misconduct, LaSalle approved the constitutionally deficient actions of its medical staff. LaSalle also attempted to engage in a coverup by falsely reporting the time frame between then Ms. Angerbauer was found unresponsive and when an ambulance was summoned.

53.     All acts and omissions committed by the corporate defendants were committed with intent, malice and/or with reckless disregard for Morgan Angerbauer's federal constitutional rights. Moreover, the corporate defendants either (a) intentionally pursued a course of conduct for the purpose of causing injury, or (b) knew or should have known that their conduct would naturally and probably result in injury or damages and, nevertheless, continued the conduct with malice, deliberate indifference and reckless disregard of the consequences.

54.     The corporate defendants had a duty to treat Morgan Angerbauer in accordance with the

applicable standards of medical and correctional care. The corporate defendants breached those duties and Ms. Angerbauer's damages, including her pain and suffering and ultimate death, were the direct and foreseeable result of the tortious action and inactions of the corporate defendants alleged herein.

55. The investigation by the Texarkana, Arkansas Police Department also revealed that LaSalle employees pre-completed the cell check log for the medical observation cell. According to that document, LaSalle staff was logging cell checks on Ms. Angerbauer two hours after she died. This is yet another example of the corporate defendants' pattern, practice and custom of falsifying records as described in paragraph 50 herein above.


## VI.  ADDITIONAL FACTS APPLICABLE TO MUNICIPAL DEFENDANTS

56. Defendant Bowie County delegated its final policy-making authority to the corporate defendants. Despite this, Bowie County has a continuing duty to ensure that its corporate policy makers were meeting the constitutional needs of its inmates/detainees. Bowie County adopted and ratified the policies, customs and practices of the corporate defendants as its own. As such, Bowie County is liable for any unconstitutional corporate policies, customs or practices that resulted in harm to any inmates/detainees confined in the Bi-State Jail, including the unconstitutional policies, customs and practices of Defendants LaSalle and LaSalle Management that caused the death of Morgan Angerbauer. It was foreseeable that such policies, customs and practices would put the lives of inmates/detainees of the Bi-State Jail at risk, and such policies, customs and practices caused and/or substantially contributed to the death of Morgan Angerbauer.

57. Defendant City of Texarkana, Arkansas delegated its final policy-making authority to the corporate defendants. Despite this the City of Texarkana, Arkansas had a continuing duty to ensure that its corporate policy makers were meeting the constitutional needs of its inmates/detainees. The City of Texarkana, Arkansas adopted and ratified the policies, customs and practices of the corporate defendants and its own. As such, the City of Texarkana, Arkansas is liable for any unconstitutional corporate policies, customs and practices that resulted in harm to any inmate/detainee confined in the Bi-State Jail, including the unconstitutional policies, customs and practices of Defendants LaSalle and LaSalle Management that caused the death of Morgan Angerbauer. It was foreseeable that such policies, customs and practices would put the lives of Bi-State Jail inmates/detainees at risk, and such policies, customs and practices caused and/or substantially contributed to the death of Morgan Angerbauer.

58. All defendants, individually and in concert, had knowledge of and were deliberately indifferent to:

   a.   The ongoing pattern and practice of inmate/detainee deaths due to lack of proper medical attention at the Bi-State Jail, which have occurred both before and since the death of Morgan Angerbauer;

   b.   The ongoing failure to implement adequate policies, guidelines and procedures - and adequate training in the implementation of existing policies, guidelines and procedures - to reasonably ensure the safety of detainees who suffered from a medical emergency while in custody;

   c.   The failure to following existing policies, guidelines and procedures regarding the

medical needs of inmates/detainees during the time that Morgan Angerbauer was detained;

d. The failure to provide necessary and adequate medical treatment for inmates/detainees who suffer from a medical emergency;

e. The failure to properly monitor the personnel within the Bi-Saet Jail to ensure that all personnel were performing their assigned tasks in a manner that did not violate the rights of inmates/detainees;

f. The failure to ensure that Bi-State Jail medical personnel were trained in addressing medical emergencies in a medically appropriate manner, including prompt referrals to the emergency room when necessary; and

g. The failure to correct known deficiencies in the Bi-State Jail's operations so that the jail complied with all required minimum standards.

59. Pursuant to the contract for operation of the Bi-State Jail, LaSalle/LaSalle Management also undertook an affirmative duty to train its employees to prevent injury, death and/or violations of the rights of inmates/detainees.

60. LaSalle/LaSalle Management failed to provide proper training to Defendant Johnson in the appropriate response to a diabetic detainee asking for blood sugar testing and in the appropriate time to call 911 in a medical emergency, as demonstrated by Johnson's complete lack of understanding of either of these aspects of her job.

61. LaSalle/LaSalle Management negligently failed to provide proper training to Defendant Lynch in the appropriate manner of supervision of other nurses at the Bi-State Jail, as well as when to refer an inmate/detainee to outside medical care, as demonstrated by Lynch's

complete failure to supervise Defendant Johnson from June 29 to July 1, 2016, and Lynch's complete failure to refer Morgan Angerbauer to outside medical treatment earlier in the week when her blood sugar readings were consistently elevated.

62. LaSalle/LaSalle Management negligently failed to provide proper training to Warden Bob Page in the appropriate manner of operating and overseeing a jail facility, as demonstrated by Page's complete failure to ensure that Defendants Lynch and Johnson understood proper day-to-day medical protocol so as to avoid an unnecessary risk of injury or death to inmates/detainees, especially after the death of Michael Sabbie.

63. The failure of LaSalle/LaSalle Management to properly train Defendants Johnson, Lynch and Page renders it directly liable to Plaintiffs for its own action or inaction.

64. LaSalle/LaSalle Management negligently contracted with a doctor who was located over a two-hour drive away from Bi-State Jail; who did not oversee medical treatment at Bi-Sate Jail in any meaningful way; who did not have control or supervisory ability over any of the nursing staff at Bi-State Jail; and who was inadequate to fulfill the requirement that LaSalle maintain a contract with a doctor for medical care at Bi-State Jail.

65. The negligence of LaSalle/LaSalle Management as detailed in the preceding paragraphs was the direct and proximate cause of the death of Morgan Angerbauer, as proper training of Defendants Johnson and Lynch, as well as contracting with a doctor who could actually provide oversight and medical care, would have prevented the death of Ms. Angerbauer.

66. As a result of the negligence of LaSalle/LaSalle Management, Morgan Angerbauer suffered compensable damages in the form of pain and suffering, personal injury and death.

67.   Defendant Johnson was, at all times relevant to this complaint, tasked with observing inmates/detainees in the medical observation cells and ensuring that all inmates/detainees received proper and adequate medical attention, including referral to emergency medical attention through the prompt notification of supervisory employees and 911. Defendant Johnson, as a licensed healthcare professional and employee of LaSalle (or a subsidiary thereof), was required to follow all jail policies and procedures regarding medical emergencies, interaction with diabetic inmates, and administration of medications. Defendant Johnson, as a licensed healthcare professional, was further required to abide by all nursing rules, procedures, regulations and guidelines in treating Ms. Angerbauer.

68.   Defendant Lynch, as nurse supervisor, was tasked with ensuring that all nurses employed by LaSalle at the Bi-State Jail were properly trained and supervised such that the nurses knew the relevant policies and procedures and inmates/detainees received proper medical attention at all times.

69.   Defendants Jane Does #1-10 were required to follow all policies and procedures regarding the healthcare, medical emergencies, observation and documentation of inmates/detainees.

70.   Defendants John Does #1-10 were required to follow all policies and procedures regarding the healthcare, medical emergencies, observation and documentation of inmates/detainees.

71.   At the time that Defendant Johnson arrived for her work shift at the Bi-State Jail on June 30, 2016, she knew or should have known through reasonable efforts that Ms. Angerbauer's blood sugar had repeatedly been elevated over the previous two days, and that refusing to test Ms. Angerbauer's blood sugar for almost 12 hours under these circumstances amounted to

gross negligence.

72.     Defendant Lynch violated Morgan Angerbauer's civil rights as follows:

    a.    She was aware of repeated failures to provide for the serious medical needs of inmates and took no adequate steps to address these failures; and

    b.    She was aware of the need to properly train Bi-State Jail nurses and failed to provide such training to such an extent that Bi-State Jail nurses were wholly unfamiliar with how to address Morgan Angerbauer's serious medical emergency.

73.     Defendant Johnson violated Morgan Angerbauer's constitutional rights by refusing to provide medical attention, even when requested, and even when Johnson was aware of Ms. Angerbauer's diabetes, consistently high blood sugar readings, and the lack of any blood sugar testing since mid-morning of June 30, 2016. The failure to provide any medical attention and the delay in securing medical treatment on July 1, 2016, amount to a deprivation of life without due process in violation of the Fourteenth Amendment.

74.     Defendants Jane Does #1-10 and John Does #1-10 violated Morgan Angerbauer's constitutional rights by failing to provide any medical attention to her or refer her to an emergency room when it became clear that Defendant Johnson was not providing proper medical attention. This failure to provide medical attention amounts to a deprivation of life without due process in violation of the Fourteenth Amendment.

75.     Defendants Johnson, Lynch, Jane Does #1-10 and John Does #1-10, by virtue of their employment with LaSalle at the Bi-State Jail while acting in furtherance of their course and scope of employment or business relationship with LaSalle, which includes contractual duties owed to all inmates and detainees, had a duty to Morgan Angerbauer to ensure that she

received medical attention and that she was not exposed to undue risk of harm or injury.

76.     Defendant Lynch, while acting in furtherance of her course and scope of employment or business relationship with LaSalle, breached this duty by failing to refer Morgan Angerbauer to an emergency room on June 29, 2016, when her blood sugar readings were consistently elevated, by refusing to provide medical attention to Ms. Angerbauer on June 30, 2016, and by allowing her to suffer and die on the floor of the medical observation cell on July 1, 2016.

77.     Defendant Johnson, while acting in furtherance of her course and scope of employment or business relationship with LaSalle, breached this duty by failing to provide any medical treatment to Morgan Angerbauer between 5:15 p.m. on June 30, 2016 and 4:14 a.m. on July 1, 2016, which, as the Texas State Board of Nursing noted, "was likely to injure the inmate in that significant changes in the inmate's status may have gone undetected and prevented a timely intervention."

78.     Defendant Johnson also breached her duty to Morgan Angerbauer by waiting over forty minutes to call 911 on the morning of July 1, 2016, which the Texas State Board of Nursing noted, "resulted in a delay in emergency treatment for the patient that was needed to prevent further complications, and may have contributed to the patient's subsequent demise." Defendant Johnson and other LaSalle employees then fabricated a time line in a futile attempt to mislead authorities and Plaintiffs.

79.     Defendant Lynch, while acting in furtherance of her course and scope of employment or business relationship with LaSalle, had a duty to ensure that Defendant Johnson, as an employee under the supervision of Lynch, did not negligently undertake actions that were likely to injure Morgan Angerbauer.

80.     The breach of these duties described herein above was the actual and proximate cause of Morgan Angerbauer's death, as diabetic ketoacidosis occurred only because the breach of their duties by these defendants.

81.     Defendants LaSalle and LaSalle Management, as employer of the other named defendants, may be held liable for the actions or inactions of the other defendants under a common law theory of respondeat superior or vicarious liability, as the individual defendants were working under the employ and control of LaSalle/LaSalle Managment for the benefit of LaSalle and within the general scope of their employment with LaSalle/LaSalle Management.

82.     As a result of this negligence, Morgan Angerbauer suffered compensable damages in the form of pain and suffering, personal injury and death.


## VIII.  CAUSES OF ACTION

A.     CORPORATE DEFENDANTS

    1.     42 U.S.C. § 1983

83.     Based on the allegations in this complaint, the corporate Defendants (LaSalle and LaSalle Management) are liable under 42 U.S.C. § 1983 for violating the Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution. This includes depriving Morgan Angerbauer of her Fourteenth Amendment right to adequate medical care, as well as depriving her surviving family members of the constitutional liberty interest in their relationship and their society and companionship with her.

    2.     Arkansas Wrongful Death and Survival

84.     Based on the allegations in this complaint, the corporate Defendants (LaSalle and LaSalle

Management) are liable under the Arkansas Wrongful Death and Survival laws. Ark. Code Ann. § 16-62-101, 102 for tortiously causing the death and pre-death pain and suffering of Morgan Angerbauer by violating the applicable correctional and medical standards of care and by violating Article 2, Sections 8 and 15 of the Arkansas Constitution - giving rise to a claim under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

B.    MUNICIPAL DEFENDANTS

1.    42 U.S.C. § 1983

85.   Based on the allegations in this complaint, the municipal Defendants (Bowie County and City of Texarkana, Arkansas) are liable under the Arkansas Wrongful Death and Survival law. Ark. Code Ann. § 16-62-101, 102 for tortiously causing the death and pre-death pain and suffering of Morgan Angerbauer by violating the applicable correctional and medical standards of care and by violating Article 2, Sections 8 and 15 of the Arkansas Constitution - giving rise to a claim under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

2.    Arkansas Wrongful Death and Survival

86.   Based on the allegations set forth in this complaint, the municipal Defendants (Bowie County and City of Texarkana, Arkansas) are liable under the Arkansas Wrongful Death and Survival laws. Ark. Code Ann. § 16-62-101, 102 for tortiously causing the death and pre-death pain and suffering of Morgan Angerbauer by violating the applicable correctional and medical standards of care and by violating Article 2, Sections 8 and 15 of the Arkansas Constitution - giving rise to a claim under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

C.    INDIVIDUAL DEFENDANTS

1.    42 U.S.C. § 1983

87.   Based on the allegations in this complaint, all individuals Defendants are liable under 42 U.S.C. § 1983 for violating the Plaintiffs' rights under the Fourteenth Amendment to the United States Constitution for depriving Morgan Angerbauer of her right to adequate medical care and for depriving her surviving family members of their constitutional liberty interest in their relationship and their society and companionship with her. Individual liability under 42 U.S.C. § 1983 also extends to the supervisory defendant Lynch for her failure to oversee her subordinates and ensure compliance with correctional standards of care as described in this complaint.

2.    Arkansas Wrongful Death and Survival

88.   Based on the allegations set forth in this complaint, the individuals Defendants are liable under the Arkansas Wrongful Death and Survival laws. Ark. Code Ann. § 16-62-101, 102 for tortiously causing the death and pre-death pain and suffering of Morgan Angerbauer by violating the applicable correctional and medical standards of care and by violating Article 2, Sections 8 and 15 of the Arkansas Constitution - giving rise to a claim under the Arkansas Civil Rights Act, Ark. Code Ann. § 16-123-105.

IX.   DAMAGES

89.   Morgan Angerbauer was 20 years of age at the time of her death. Her parents, step-parents and siblings have suffered and will continue to suffer a loss of consortium and damage to the parent/child and sibling relationships, including the loss of love, affection, solace, comfort,

companionship, society, assistance and emotional support from the absence of their daughter and sister.

90.     Morgan Angerbauer endured conscious pain and suffering prior to her death as a result of defendants' conduct. The Estate of Morgan Angerbauer is entitled to recover monetary damages for that pain and suffering, as well as the decedent's funeral and burial expenses, and for the decedent's loss of life.

## X.   PUNITIVE DAMAGES

91.     Defendants knew, or should have known in light of the surrounding circumstances, that their conduct would naturally and probably result in injury and yet continued such conduct with reckless disregard of the consequences from which malice may be inferred. Defendants intentionally pursued a course of conduct for the purpose of causing injury. Accordingly, Plaintiffs seek an award of punitive damages against the individual and corporate defendants.

## XI.   JURY DEMAND

92.     Plaintiffs hereby demand a trial by jury.

## XII.   PRAYER FOR RELIEF

Plaintiffs respectfully request that the Court award them the following relief:

a.      all available compensatory damages, including, but not limited to: damages to the decedent for her mental and physical pain and suffering, the loss of the value of her life, and funeral expenses; damages to her surviving family members for their loss of society and companionship, loss of love and affection, loss of financial support,

loss of household services, and loss of care, comfort and guidance; and all compensatory damages available under state and federal law;

b.      punitive damages against all individual and corporate defendants;

c.      attorney's fees and costs;

d.      prejudgment interest as appropriate; and

e.      any such other relief that this Court deems just and equitable.




June 27, 2018                          Respectfully submitted,

                                       */s/ W. David Carter*
                                       W. David Carter, TSB No. 03932780
                                       MERCY ✶ CARTER, L.L.P.
                                       1724 Galleria Oaks Drive
                                       Texarkana, Texas 75503
                                       (903) 794-9419 - Telephone
                                       (903) 794-1268 - Facsimile
                                       wdcarter@texarkanalawyers.com

                                       Attorneys for Plaintiffs Victoria Leigh, as Special Administrator of the Estate of Morgan Angerbauer; Jennifer Houser, Individually and as Parent and Natural Guardian of Morgan Angerbauer, a Minor; and Andy Hunter Angerbauer

<u>CERTIFICATE OF SERVICE</u>

I, W. David Carter, certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

/s/ *W. David Carter*