IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| VICTORIA LEIGH, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF MORGAN ANGERBAUER, ET AL<br>    PLAINTIFFS<br><br>vs.<br><br>SOUTHWESTERN CORRECTIONAL, LLC ET AL<br>    DEFENDANTS | § § § § § § § § § § § | Civil Action No. 5:16CV129 |

**PLAINTIFF'S MOTION TO COMPEL PRODUCTION OF
DOCUMENTS AND INFORMATION AGAINST LaSALLE
CORPORATE DEFENDANTS AND MEMORANDUM IN SUPPORT**

COME NOW Plaintiffs Victoria Leigh, as Special Administrator of the Estate of Morgan Angerbauer; Jennifer Houser, Individually and as Parent and Natural Guardian of M.A.; Andy Houser; and Hunter Angerbauer, and for their Motion to Compel Production of Documents and Information Against the LaSalle Corporate Defendants (hereinafter "LaSalle") would show as follows:

A.   INTRODUCTION

1.   This is a wrongful death/survival action arising out of the death of Morgan Angerbauer. Morgan, age 20, died while being held in the Bi-State Justice Center Jail ("Bi-State Jail") on July 1, 2016. Plaintiffs assert claims pursuant to 28 U.S.C. § 1983, the Arkansas Civil Rights Act, and Arkansas common law (negligence).

2.   Morgan was a Type I diabetic and required insulin injections to keep her blood glucose levels in a safe range. Morgan died of diabetic ketoacidosis because staff at the Bi-State Jail failed to follow established medical protocols regarding administration of insulin and monitoring detainees while

they are housed in medical observation cells. Staff also violated state minimum jail standards by repeatedly failing to conduct required face to face observations of Morgan, who slipped into a diabetic coma.[1] When staff finally determined that Morgan was unresponsive, no one summoned an ambulance for more than forty-five (45) minutes. Jail cameras recorded the entire last hour of Morgan's life, even as she died bare chested, lying in her own vomit on a cell floor.[2]

3. Plaintiffs have requested that LaSalle produce documents and information relevant to Plaintiffs' claims. LaSalle has refused to produce the said documents and information, resulting in the filing of this motion.

B. FACTUAL BACKGROUND

4. The LaSalle Defendants incarcerate humans for profit. LaSalle currently operates eighteen (18) jail facilities with a total inmate capacity of over 13,000. LaSalle operates jails in five states, including the following units in Texas:

> Bowie County Correctional Center/Bi-State Jail
> City of Fort Worth Booking Intake
> Fannin County Jail
> Jefferson County Downtown Jail
> Johnson County Law Enforcement Center
> Limestone County Detention Center
> Jack Harwell Detention Center [3]
> Parker County Jail

---

1   Jail staff falsified multiple jail records to fraudulently reflect that the mandated face to face observations had been conducted.

2   One of LaSalle's nurses, Defendant Brittany Johnson, was convicted of negligent homicide for refusing to treat Morgan throughout the night of June 30 - July 1, 2016.

3   As of October 1, 2019, McLennan County has taken over operation of the Jack Harwell Detention Center.

       Prairieland Detention Center

       Rolling Plains Detention Center

       West Texas Detention Center

       Willacy State Jail

LaSalle currently houses approximately 7,000 inmates and detainees in Texas.

5.     State minimum jail standards require public and private jail operators to conduct face to face observation checks on general population inmates/detainees at least every sixty (60) minutes. Those same standards require face to face observations at least every thirty (30) minutes for inmates/detainees known to be assaultive, potentially suicidal, mentally ill, or who have demonstrated bizarre character. See 37 Tex. Admin. Code § 275.1. LaSalle is required to document each observation check. *Id*.

6.     LaSalle's internal policies required staff to conduct face to face observations of all detainees housed in medication observation cells every 20-30 minutes.

7.     Failing to conduct the mandated face to face observations and the falsification of jail records to reflect that observations were conducted has been a persistent and ongoing problem at LaSalle's Texas facilities. Approximately one year before the death of Morgan Angerbauer, Michael Sabbie, also a diabetic, died while in custody at the Bi-State Jail.[4] As with Morgan's case, internal and law enforcement investigations concluded that correctional and nursing staff were not conducting the state mandated face to face observations and falsified jail records to reflect they had in fact occurred. Former LaSalle employees have testified that they were trained and actually instructed to falsify jail records to reflect face to face observations had taken place when in fact they had not. The failure to

---

4     Sabbie's estate sued LaSalle and others in this Court. Sabbie v. Southwestern Correctional, LLC, et al, 5:17CV113. After this Court denied LaSalle's dispositive motions, the case was settled.

conduct face to face observations and falsification of records continues today at the Bi-State Jail. Thus far in 2019 at least two detainees have died while in custody at the Bi-State Jail. In both those cases the State Jail Commission confirmed that the mandated periodic checks were not conducted as to either of those individuals (Franklin Greathouse and Charles Rodden).

8. The practice of falsifying observation logs and failing to conduct mandated face to face observations is also prevalent at other LaSalle facilities in Texas. Two deaths at the Jack Harwell Detention Center in Waco, Texas occurred between the deaths of Michael Sabbie in 2015 and Morgan Angerbauer in 2016. In both those cases LaSalle guards admitted to police that they were understaffed; that they had not conducted the required face to face observations; and that they were instructed by LaSalle management to falsify jail records to reflect they had conducted the checks.

9. In November of 2017 another detainee died while in custody at LaSalle's Parker County Detention Center. Texas Rangers investigated that death and learned that guards at the Parker County Detention Center were not conducting and documenting the mandated face to face observations.

10. LaSalle has actually admitted that the falsification of activity logs and failure to conduct mandated observations occurs system wide in Texas. LaSalle's 30(b)(6) witness acknowledged that falsification of check logs "occurred all over the state." (See attached Exhibit A.)

11. LaSalle's widespread practice of falsifying jail records is not limited to activity logs. At least one former LaSalle employee has testified that she did not receive forty (40) hours of in-service training prior to be being put to work on the floor of the Bi-State Jail, and that her training record was filled out in advance to reflect that she had received forty (40) hours of training on the same day.[5]

---

5   This corrections officer, Simone Nash, was the LaSalle employee who falsified observation logs on the night Michael Sabbie died.

12. The Texas Commission on Law Enforcement ("TCOLE"), which is responsible for certifying peace officers and jailers, conducted an investigation into LaSalle's falsification of training records at the Parker County Detention Center. After taking sworn statements from more than a dozen LaSalle correctional officers, TCOLE concluded it was "clear that numerous false training hours were reported to the Texas Commission on Law Enforcement between 2015 and 2017 by former Lieutenant Atlee Walters, a former LaSalle Corrections employee, who was appointed by the Parker County Sheriff's Office." (See attached Exhibit B.) As a result of that investigation, Lt. Walters surrendered his jailer license to TCOLE and both wardens at the Parker County facility were issued warning letters.

13. In summary, publically available post-death investigations revealed that in each of the following deaths at the Bi-State Jail state mandated face to face observations were not conducted and records were falsified to indicate they did:

| Name | Date of Death |
|---|---|
| Michael Sabbie | July 22, 2015 |
| Morgan Angerbauer | July 1, 2016 |
| Franklin Greathouse | March 11, 2019 |
| Charles Rodden | July 6, 2019 |

As noted above, post-death investigations into two detainees in the McLellan County Jail and one in the Parker County Detention Center also uncovered LaSalle's failure to conducted mandated face to face observations and/or falsification of activity logs in the following deaths:

| Name | Date of Death |
|---|---|
| Michael Martinez | November 1, 2015 |

| | |
|---|---|
| Kristian Jesse Culver | May 30, 2016 |
| Denay Lauren Birnie | November 9, 2017 |

14. In light of the mounting evidence that LaSalle personnel routinely fail to conduct required face to face observations and falsify records to indicate they did, Plaintiffs requested that LaSalle produce Critical Incident Reports and Serious Incident Reviews concerning the deaths of eighteen (18) detainees/inmates who have died in custody at LaSalle operated facilities in Texas since February of 2013 (the time at which LaSalle began operating the Bi-State Jail).[6] (See attached Exhibits C-H.) LaSalle generates a Critical Incident Report when an detainee or inmate dies in custody. In some, but not all cases, LaSalle personnel from outside the facility in which the death occurred are brought in to conduct a "Serious Incident Review." The Critical Incident Report and Serious Incident Review generated in connection the death of Morgan Angerbauer confirmed that nursing and correctional staff failed to follow numerous protocols, failed to conduct state mandated face to face observations, and falsified records. Plaintiffs seek disclosure of all existing Critical Incident Reports and Serious Incident Reviews in the other nineteen (19) deaths at LaSalle facilitites since 2013 because LaSalle was required by law (and its own policies) to conduct and accurately document face to face observations every thirty (30) minutes for detainees housed in special units and every sixty (60) minutes for detainees in general population. Failure to do so in the other deaths should be reflected in these internal investigation reports as they were in Morgan's case.

15. The LaSalle corporate defendants against which this motion is directed are Southwestern Correctional, LLC d/b/a LaSalle Corrections, LLC and LaSalle Southwest Corrections and LaSalle

---

[6] One of those eighteen, Holly Barlow-Austin, died at Wadley Regional Medical Center days after being transferred from the Bi-State Jail.

Management Company. These defendants collectively operate the Bi-State Jail under a contract with Defendant Bowie County, Texas and with the approval of Defendant City of Texarkana, Arkansas. As private corporations performing the traditional governmental function of operating a jail, LaSalle is subject to liability under 42 U.S.C. § 1983. See *Reeves v. Lynch*, 5:15CV-146, 2017 U.S. Dist. LEXIS 133232 at 21(E.D. Tex., June 6, 2017) ("A prison management corporation such as LaSalle Corrections may be sued under 42 U.S.C. § 1983 for alleged constitutional injury because the operation of a prison is a fundamental government function.")

16.     Although the individual correctional officers and nurses are employed by LaSalle and are alleged to be responsible for the underlying constitutional violations against Morgan Angerbauer, it is a basic principal of § 1983 law that the corporate defendants themselves are not vicariously liable for their employees' unconstitutional conduct under the common law doctrine of respondeat superior. *Olivas v. Corr. Corp. of Am.*, 408 F. Supp. 2d, 251, 255 (N.D. Tex. 2006). Rather, as required by the seminal case of *Monell v. Dep't. of Soc. Servs.*, 436 U.S. 655 (1978), LaSalle is subject only to § 1983 liability for the unconstitutional mistreatment of Morgan Angerbauer if her estate can prove that LaSalle had one or more customs or policies that were the moving force behind the underlying violations. *Reeves*, 2017 U.S. Dist. LEXIS at 21. ("The test for determining the liability of a private corporation performing a government function is essentially the same as that used to determined municipal or local government liability.") *Id*. at 21-22. A plaintiff "must show that an official policy or custom was a cause in fact of the deprivation of rights inflicted." *Id*. at 22.

17.     A primary method for a plaintiff to prevail on a *Monell* claim is by demonstrating the existence of a pattern of similar misconduct against similarly situated individuals. "A pattern is tantamount to official policy when it is so common and well-settled as to constitute a custom that

fairly represents municipal [or corporate] policy." *Peterson v. City of Fort Worth*, 588, F.3d 838, 850 (5th Cir. 2009) (internal quotations omitted). This is known as "pattern and practice evidence," and discovering such evidence is often essential for any plaintiff who seeks to prevail on a *Monell* claim. Prior incidents of similar misconduct towards similarly situated individuals can support a *Monell* claim against the corporate or municipal defendant. *Id.* However, the burdens on the plaintiff are substantial. For one thing, "[w]here prior incidents are used to prove a pattern, they must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [municipal or corporate] employees." *Id*. A plaintiff who hopes to prevail via pattern and practice evidence "must demonstrate a pattern of abuses that transcends the error made in a single case." *Id*. at 850-51. Proof of a pattern sufficient to give rise to corporate liability requires proof of "similarity and specificity" with regard to the misconduct alleged. *Id*. at 851. Moreover, a plaintiff cannot prevail by showing that there are only a few instances of similar misconduct. Rather, "[a] pattern also requires sufficiently numerous prior incidents, as opposed to isolated instances." *Id*.

18. This high burden has been consistently affirmed by the Fifth Circuit and followed by district courts within it. See *Sky v. City of Arlington*, 712 Fed. Appx. 396, 399-400 (5th Cir. 2017) (The 5th Circuit "views municipality customs' widespread practice that is so common and well settled - as municipal policy [when there is evidence] of a persistent, widespread practice of government officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents government policy.") *Sanchez v. Young County*, 866 F.3d 274, 280 (5th Cir. 2017) (To be unconstitutional, "a municipal entity's policy that derives from custom or practice must be so common and well settled as to

constitute a custom that fairly represents municipal policy," and a plaintiff cannot prevail under the *Monell* theory without "evidence about the alleged maltreatment of any other detainees" at the jail.)

### C. DOCUMENTS AND INFORMATION TO BE COMPELLED

19. Plaintiffs have requested, but not been provided with LaSalle Critical Incident Reports and Serious Incident Reviews concerning the following deaths in LaSalle facilities since February 2013:

<u>Bowie County</u>

| | |
|---|---|
| Terrance Demetrius Shorter | 11/21/2013 |
| Calvin Lee Noiel | 7/19/2014 |
| Michael Todd Sabbie | 7/22/2015 |
| Brandon Shane Bynum | 8/11/2015 |
| Staci Rochelle Washington | 5/14/2016 |
| Oscar Garza | 6/20/2016 |
| Juan Jose Cordova-Sandos | 11/18/2017 |
| Troy Donovan Pree | 6/07/2018 |
| Franklin Brooks Greathouse | 3/11/2019 |
| Michael Lowell Rodden | 7/06/2019 |

<u>Jack Harwell Detention Center</u>

| | |
|---|---|
| Michael Martinez | 11/01/2015 |
| Kristian Jesse Culver | 5/30/2016 |

<u>Parker County Detention Center</u>

| | |
|---|---|
| Charles Thomas Sellers | 3/15/16 |
| Jesse Andrew Debusk | 12/24/16 |
| Earnest Benedict Staggalli | 5/15/17 |
| Lauren Denay Birnie | 11/08/17 |
| Bernard Randolph Tully | 8/04/18 |

<u>Johnson County Jail</u>

Ronald Ray Beasley              5/12/15

Again, each of the deceased detainees were similarly situated in that LaSalle was required to conduct thirty (30) or sixty (60) minute observations and properly document them. The only Critical Incident Report provided thus far in this case concerns the death of Morgan Angerbauer. That report, as well as the LaSalle Serious Incident Review, confirmed multiple failures by staff at the Bi-State Jail to follow written medical protocols.[7] These internal reviews also concluded that multiple correctional staff falsified activity logs to reflect that the mandated observations took place. LaSalle should have generated Critical Incident Reports and/or Serious Incident Reviews in each of the eighteen (18) cases where citizens died while in the custody of LaSalle units in Texas. As noted above, the information contained in these reports goes to the heart of Plaintiffs' *Monell* claims. In addition, the LaSalle internal reviews and reports are extremely relevant to Plaintiffs' punitive damage claims. The recent Bi-State Jail deaths of inmates Greathouse and Rodden reveal that the practice of failing to conduct state mandated face to face observations and falsifying activity logs continues to occur unabated. Apparently the only time LaSalle reviews video footage to determine whether its employees have conducted observations recorded on paper is when an inmate dies in custody.

20.     Plaintiffs also requested, and LaSalle has refused to produce, copies of all disciplinary action taken against LaSalle employees from January of 2014 to present based on findings that the employee either falsified records or failed to conduct required face to face detainee/inmate checks at LaSalle's Texas facilities. Obviously, these records will further document how pervasive the

---

[7]     Although Plaintiffs requested disclosure of all internal investigation reports concerning Morgan's death in the summer of 2018, the Serious Incident Review was not disclosed until July of 2019.

practice of falsifying activity logs and failing to conduct required checks is in LaSalle's Texas units.[8] A magistrate judge recently ordered LaSalle to respond to a similar request in the case arising out of the death of Michael Martinez at the Jack Harwell Detention Center. (See attached Exhibit I.)

21.     Plaintiffs have also requested, and LaSalle has refused to produce, copies of "any new medical protocols and sliding scales which have gone into effect since Dr. Reynolds took over as medical director of the Bi-State Jail and Annex facilities." This change in medical directors took place in early 2019. [9] Evidence of the new medical protocols and sliding scales may not be admissible to show culpable conduct as they constitute subsequent remedial measures under Rule 407 of the Federal Rules of Evidence. However, the new medical protocols and sliding scales may be admissible for purposes of impeachment, control or the feasibility of precautionary measures. The Court should also require LaSalle to produce its current medical protocols and insulin sliding scales because an appropriate open records request was made for records concerning operation of a public jail in Texas, and neither Bowie County nor LaSalle have articulated that any exceptions to the Texas Freedom of Information Act are applicable.

22.     Plaintiffs also requested that LaSalle conduct a search of its Cloud-hosted email files of employees at four of LaSalle's Texas facilities (Bi-State Jail, Bowie County Correctional Center, Jack Harwell Detention Center, and Parker County Detention Center) for the terms "offender checks" and "falsification" from February of 2013 to present and provide Plaintiffs with responsive

---

8   Plaintiffs have also submitted an interrogatory as to the identity of all LaSalle employees disciplined under these circumstances. LaSalle's answer to this interrogatory is due on November 4, 2019.

9   Plaintiffs submitted an appropriate open records request to Bowie County for the current medical protocols and insulin sliding scales. Bowie County referred Plaintiffs to LaSalle, which has not yet provided the requested protocols and sliding scales.

emails or a report of the following:

    a.    The number of different email accounts from which data was collected conducting the search;

    b.    The size (in gigabytes) of the sample data set, both before and after de-duplication;

    c.    The size of the data subset that includes the search terms "offender checks" and "falsification" and the number of files in the same data subject; and

    d.    The "hit rate" on the search terms offender checks and falsification in the sample data set.

Plaintiffs made this request in light of two Orders recently entered in the *Martinez* case. (See attached Exhibits I and J.) LaSalle recently agreed in that case to preserve its computer, hard drive and server contents from its Texas facilities as Magistrate Judge Manske ordered in *Martinez*, LaSalle should conduct a search of the requested terms in this case and produce the responsive emails. Should LaSalle argue that production of the responsive emails is unduly burdensome, it can provide the requested report regarding the search. To the extent LaSalle employees were communicating in writing concerning offender checks and falsification of records, it is highly relevant to Plaintiffs' *Monell*, supervision and training claims, as well as Plaintiffs' punitive damage claims.

23.    Plaintiffs have requested, and LaSalle has not produced, a list of all job titles and/or organization charts for its Texas facilities from February of 2013 to present, nor has LaSalle agreed to supplement its discovery and disclosure responses to identify any responsive items that previously existed, but are no longer in Defendants' custody, care or control, including an explanation as to why those items are no longer in Defendants' custody, care or control. Again, the *Martinez* court ordered

LaSalle to do so and this Court should do the same. (See attached Exhibit I.)

24.     Lastly, Plaintiffs requested that LaSalle produce documents setting forth the current net worth and profit/loss statements for the corporate defendants. LaSalle has indicated it will produce the financial information once the Court's standard Protective Order is entered. To the extent LaSalle fails to provide this information, Plaintiffs would request that the Court compel LaSalle to produce it, subject to the terms of the Court's Protective Order. Federal courts in Texas have consistently ruled that evidence of net worth is "relevant, discoverable and admissible at trial to evaluate a plaintiff's punitive damage claim. *Wright v. Weaver*, 2009 WL 5170218 (E.D. Tex. Dec.18, 2009). See also *Ferko v. Nat'l. Ass'n. For Stock Car Racing, Inc.*, 218 F. R.D. 125, 137 (E.D. Tex. 2013).

### D.  ARGUMENT

25.     Discovery may be obtained about any matter that is not privileged and that is both relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1).

26.     A court may compel responses to discovery if a party did not answer interrogatories submitted under Rule 33 or a party did not respond or permit inspection under Rule 34. Fed. R. Civ. P. 37(a)(3)(B).

27.     Unless otherwise limited by court order, the scope of discovery is governed by Rule 26(b)(1). *Johnson v. Omni Optical Lab, No. 1*; 10-CV-522, 2012 WL 13005408 at 1 (E.D. Tex. August 30, 2012). Rule 26(b)(1) provides parties may obtain discovery regarding any matter, not privileged, that is relevant to the claim or defense of any party and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the proposed discovery in

resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

28. At the discovery stage, relevancy is broadly construed: "Information is relevant if it encompasses any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case. *Johnson*, 2012 WL 13005408 at 1. Local Rule CV-26(d) provides additional guidance in evaluating whether the information sought in discovery is "relevant to the claim or defense of any party." The rule explains that relevant information includes information "likely to have an influence on or affect the outcome of a claim or defense," information that "deserves to be considered in the preparation, evaluation or trial of a claim or defense," and information "that reasonable and competent counsel would consider reasonably necessary to prepare, evaluate or try a claim or defense."

29. The factors identified in Rule 26(b)(1) all mitigate in favor of granting this motion. The disputed items are clearly relevant because they should provide additional information concerning how widespread and pervasive the practice of failing to conduct required observations and falsification of those records reaches. The disputed items are also proportional to the needs of this case. Texans are dying in alarming numbers at LaSalle facilities due to deprivation of fundamental constitutional rights. The stakes could not be higher. LaSalle has access to all of the disputed items, and Plaintiffs have no access to them. The disputed items also go to the heart of resolving the issue of whether LaSalle failed to conduct required face to face observations and/or falsified documents in the deaths of the other eighteen (18) individuals.

30. The disputed items concern a pattern of conduct that points "to the specific violation in question." See *Peterson v. City of Fort Worth*, 588 F.3d 838, 851 (5th Cir. 2009). It cannot be

disputed that LaSalle was required to conduct face to face observations of each of the deceased detainees in intervals no greater than sixty (60) minutes for inmates housed in general population and in increments of no greater than thirty (30) minutes for detainees held in special housing units. Failures on LaSalle's part to do so constitute a specific violation, regardless of who the detainee is, the charges they are facing, or what medical/mental conditions, if any, from which they suffer.

WHEREFORE, PREMISES CONSIDERED Plaintiffs respectfully request that the Court enter an Order granting this Motion to Compel and requiring the LaSalle Corporate Defendants to produce the items and information described herein with fourteen (14) days of entry of said Order, and for any and all other relief to which Plaintiffs may be entitled.

October 16, 2019

Respectfully submitted,

*/s/ W. David Carter*
W. David Carter, TSB No. 03932780
MERCY ✶ CARTER, L.L.P.
1724 Galleria Oaks Drive
Texarkana, Texas 75503
(903) 794-9419 - Telephone
(903) 794-1268 - Facsimile
wdcarter@texarkanalawyers.com

ATTORNEYS FOR PLAINTIFFS VICTORIA LEIGH, AS SPECIAL ADMINISTRATOR OF THE ESTATE OF MORGAN ANGERBAUER; JENNIFER HOUSER, INDIVIDUALLY AND AS PARENT AND NATURAL GUARDIAN OF M.A.; ANDY HOUSER; AND HUNTER ANGERBAUER

## CERTIFICATE OF CONFERENCE

Counsel for Plaintiff has, pursuant to the meet and confer requirements set forth in Local Rule CV-7(h), conferred with counsel for the LaSalle Corporate Defendants (Paul Miller) with regard to this motion. Several in-person meet and confers occurred between July 12, 2019 and the filing of this motion, as did numerous written communications attached to the motion. The parties were able to resolve some, but not all issues. The parties thus reached an impasse on the issues set forth in the motion. Defendants do not agree with the relief sought herein, and the motion is therefore opposed. Accordingly, the motion is submitted to the Court.

/s/ *W. David Carter*

## CERTIFICATE OF SERVICE

I, W. David Carter, certify that the foregoing document was filed electronically in compliance with Local Rule CV-5(a). Therefore, this document was served on all counsel who are deemed to have consented to electronic service. Local Rule CV-5(a)(3)(A).

/s/ *W. David Carter*